*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JAMES D. PISTER, SKYRAD MEDICAL IMAGING, INC., and NORTHWEST MEDICAL IMAGING, INC., | ) ) ) ) | Supreme Court No. S-15332 |
| | ) | Superior Court No. 1JU-08-00847 CI |
| Appellants, | ) ) | O P I N I O N |
| v. | ) ) | No. 7022 – July 24, 2015 |
| STATE OF ALASKA, DEPARTMENT OF REVENUE, | ) ) ) ) | |
| Appellee. | ) ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Louis J. Menendez, Judge.

Appearances: James D. Pister, M.D., pro se, Federal Way, Washington, and William M. Bankston, Bankston Gronning O'Hara, P.C., Anchorage, for Appellants. Christopher Peloso, Assistant Attorney General, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

## I.     INTRODUCTION

The State seeks to hold the sole shareholder, director, and employee of a closely held Washington corporation personally liable for the corporation's unpaid tax

debts. The superior court pierced the corporation's corporate veil, ruled that the shareholder's successor corporation was liable for the tax debt, voided two contract transfers as fraudulent conveyances, and ruled that the shareholder had breached fiduciary duties to the corporation and the State as the corporation's creditor. The shareholder and corporation appeal the superior court's decision to pierce the corporate veil, arguing that the superior court erred by not barring the State's suit under the principle of res judicata, by applying Alaska rather than Washington veil-piercing law, and by making clear factual errors. The shareholder and corporation also appeal the superior court's finding that two contracts were fraudulently conveyed.

We conclude that res judicata does not bar the State from seeking to pierce the corporation's corporate veil to collect a corporate tax debt established in an earlier case. We further conclude that the corporation's corporate veil was properly pierced under both Alaska and Washington law. And although the superior court's fraudulent conveyance determination contained errors of fact, they are unlikely to affect the relief the State seeks. We therefore affirm the superior court's decision in part, reverse it in part, and remand for further proceedings only to the extent necessary.

## II. FACTS AND PROCEEDINGS

Dr. James Pister has practiced radiology in Alaska since 1977. In 1988 he incorporated his radiology business as a Washington corporation, Northwest Medical Imaging, Inc. (Northwest Medical). Washington administratively dissolved Northwest Medical in 1990, although Pister was apparently not aware of this until 1998. Pister wound up the affairs of Northwest Medical from late 1998 into early 2001, and he incorporated a new Washington corporation, Skyrad Medical Imaging, Inc. (Skyrad), in 2000.

In 1997 the Alaska Department of Revenue assessed Northwest Medical for unpaid taxes, penalties, and interest for improper deductions between 1992 and 1995.

In the ensuing litigation, the Office of Tax Appeals twice decided that the State could not assess corporate income taxes against Northwest Medical post-dissolution, "apparently relying in part on the notion that Dr. Pister could be held personally liable for the actions of the dissolved corporation."[1] The superior court twice reversed this determination, and in *Northwest Medical Imaging, Inc. v. State, Department of Revenue*, we agreed that Northwest Medical was responsible for unpaid corporate taxes because it had "continued to contract and provide services under its corporate name" after its administrative dissolution.[2]

Our decision addressed one theory of personal liability for Pister. We disagreed with the Office of Tax Appeals's determination that Pister was necessarily personally liable for post-dissolution actions, and instead determined that under Washington law "the imposition of personal liability requires actual knowledge that there was no incorporation."[3] Under this framework, "Dr. Pister would not be personally liable for the debts of Northwest Medical because he did not know that the corporation had been dissolved."[4] Thus, to avoid the inequitable result of no party being liable for

---

[1]     *Nw. Med. Imaging, Inc. v. State, Dep't of Revenue* (*Nw. Med.*), 151 P.3d 434, 442 (Alaska 2006).

[2]     151 P.3d 434, 441 (Alaska 2006). We addressed, and ultimately rejected, Northwest Medical's threshold argument that no court had subject matter jurisdiction over a corporation that was dissolved during the years of an alleged tax liability. *See id.* at 438-39.

[3]     *Id.* at 442 (citing *Equipto Div. Aurora Equip. Co. v. Yarmouth*, 950 P.2d 451, 456 (Wash. 1998)).

[4]     *Id.*

the taxes, and to follow our decision in *University of Alaska v. Thomas Architectural Products, Inc.*,[5] we held that Northwest Medical was liable for the assessed taxes.[6]

On remand in August 2007, the Office of Tax Appeals entered judgment against Northwest Medical for $123,118. In September 2008 the State filed a complaint in the superior court against Pister and Northwest Medical, seeking to collect that judgment from Pister personally under theories of piercing the corporate veil, successor liability, and fraudulent conveyance.

In July 2012 Superior Court Judge Louis J. Menendez issued an order that resolved several preliminary issues. The order rejected Pister and Northwest Medical's argument that the State was either precluded or estopped from piercing Northwest Medical's corporate veil. The superior court applied issue preclusion law[7] and found that our holding in *Northwest Medical* that Pister was not personally liable for Northwest Medical's tax debts was a determination of the issue of personal liability for post-dissolution debts, "a distinct issue from whether [Northwest Medical's] corporate veil could potentially be pierced, once [Northwest Medical's] legal existence as a corporation was established." The latter issue had not been actually litigated, and so the superior court determined that it was not precluded. The superior court similarly refused

---

[5]     907 P.2d 448, 450 (Alaska 1995) (holding that a dissolved corporation's failure to comply with wind-up requirements made it susceptible to suit by creditors who did not receive notice of dissolution).

[6]     *See Nw. Med.*, 151 P.3d at 443-44.

[7]     *See, e.g.*, *Latham v. Palin*, 251 P.3d 341, 344 (Alaska 2011) ("We require four elements before applying collateral estoppel: (1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment.").

to find that the State was estopped[8] from pursuing its veil-piercing claim based on its prior litigation positions, both because the State's argument in *Northwest Medical* was not fatally inconsistent with its argument that Northwest Medical's corporate veil should be pierced, and because the State explicitly reserved the right to seek to pierce Northwest Medical's corporate veil in its briefing in the earlier case.

The superior court's July 2012 order also resolved a dispute over which state's law applies to veil-piercing claims against foreign corporations. The superior court noted that the answer to this question was not clear particularly in light of some authorities suggesting that because veil piercing relates to a corporation's "internal affairs," such affairs are governed by the law of the state of incorporation. But the superior court ruled that the veil-piercing claim was controlled by Alaska law because, in its assessment, we had repeatedly applied Alaska law to veil-piercing claims against foreign corporations and because Alaska might have a more significant relationship with the transaction under the analysis in section 309 of the Restatement (Second) of Conflict of Laws.

In September the parties tried the case to the court. In April 2013, after the bench trial, the superior court issued an order holding both Pister and Skyrad liable for Northwest Medical's tax debts and nullifying certain contract transfers. The order contained five legal determinations: (1) that Northwest Medical's corporate veil could be pierced under Alaska's mere instrumentality standard, (2) that Northwest Medical's corporate veil could be pierced under Alaska's misconduct standard, (3) that Skyrad was

---

[8] *See, e.g.*, *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1040 (Alaska 2002) ("Quasi-estoppel 'precludes a party from taking a position inconsistent with one . . . previously taken where circumstances render assertion of a second position unconscionable.' " (alteration in original) (quoting *Jamison v. Consol. Utils., Inc.*, 576 P.2d 97, 102 (Alaska 1978))).

liable as a successor corporation, (4) that two contracts were fraudulently conveyed, and (5) that Pister breached his fiduciary duties of care and loyalty to Northwest Medical and the State as a corporate creditor.

Pister, Northwest Medical, and Skyrad[9] appeal the superior court's decision to pierce Northwest Medical's corporate veil and to void the transfer of two contracts as fraudulent conveyances. They do not appeal Skyrad's liability as a successor or the finding that Pister breached his fiduciary duties.

## III. STANDARD OF REVIEW

"Whether res judicata applies is a question of law that we review de novo."[10]

"The appropriate choice of law is a legal question to which we apply our independent judgment."[11]

> The factual findings of the trial court are reviewed for clear error, a standard that is met if, after a thorough review of the record, we come to a definite and firm conviction that a mistake has been made. The trial court's findings regarding the credibility of witnesses and weighing of the evidence may be reversed only if clearly erroneous. In reviewing the trial

---

[9] When Pister first filed this appeal on behalf of himself, Northwest Medical, and Skyrad, he was not represented by counsel. But because he is not a licensed attorney in the state of Alaska he was only able to represent himself, *see* AS 08.08.210; Alaska Bar R. 63; *Christiansen v. Melinda*, 857 P.2d 345, 346-47 (Alaska 1993), and under Alaska law, corporations can only appear in court proceedings through an attorney unless an exception has been explicitly made by law. *See* AS 22.20.040(a)(2). Northwest Medical and Skyrad were thus briefly dismissed as appellants. The corporate entities were reinstated as appellants when an attorney filed an entry of appearance on behalf of all appellants.

[10] *Smith v. CSK Auto, Inc.*, 132 P.3d 818, 820 (Alaska 2006).

[11] *Savage Arms, Inc. v. W. Auto Supply Co.*, 18 P.3d 49, 52 (Alaska 2001).

court's factual findings, we view the evidence in the light most favorable to the party prevailing in the trial court. We may affirm the trial court's result on any basis supported by the record.[12]

## IV. DISCUSSION

### A. The Superior Court's Decision To Pierce Northwest Medical's Corporate Veil Was Correct.

#### 1. The State's suit to pierce Northwest Medical's corporate veil was not barred by res judicata.

Pister argues that the State's suit to pierce Northwest Medical's corporate veil to collect the corporation's tax debt from Pister personally is barred by the principle of claim preclusion, or res judicata.[13] We disagree.

"The doctrine of res judicata as adopted in Alaska provides that a final judgment in a prior action bars a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action."[14] "[R]es judicata bars not only relitigation of the same cause of action, but also new claims arising

---

[12] *Rausch v. Devine*, 80 P.3d 733, 737 (Alaska 2003) (internal footnotes omitted).

[13] Pister largely employed the language of issue preclusion, rather than claim preclusion, in his arguments before the trial court. However, "[w]e will consider arguments not raised explicitly in the trial court if the issue is 1) not dependent on any new or controverted facts; 2) closely related to the appellant's trial court arguments; and 3) could have been gleaned from the pleadings." *Asa'carsarmiut Tribal Council v. Wheeler*, 337 P.3d 1182, 1188 (Alaska 2014) (internal quotation marks and alteration in original omitted) (quoting *McConnell v. State, Dep't of Health & Soc. Servs., Div. of Med. Assistance*, 991 P.2d 178, 183 (Alaska 1999)).

[14] *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 166 (Alaska 1997).

from the same transactions as those in the first suit."[15] "What factual grouping constitutes a 'transaction' is determined by 'whether the facts are related in time, space, origin, or motivation,' and 'whether they form a convenient trial unit.' "[16] At issue in this case is whether the State's suit to pierce Northwest Medical's corporate veil stems from "the same cause of action" or "same transaction" as its previous suit to establish Northwest Medical's tax debt.

The previous litigation between the State and Northwest Medical concerned the propriety of certain deductions Northwest Medical had claimed as business expenses and Northwest Medical's susceptibility to being taxed given its administrative dissolution.[17] The State did not have to demonstrate that Pister had ignored corporate formalities or used the corporate form to commit fraud or a crime in that case. Nor were such determinations particularly "related in time, space, origin, or motivation"[18] to the determinations on which the earlier case turned.

Piercing the corporate veil is not a claim for damages; instead, it "is a means of imposing liability on an *underlying* cause of action such as a tort or breach of contract."[19] It is a procedural rather than a substantive claim, and it "is an equitable

---

[15] *Id.*

[16] *Id.* at 167 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)).

[17] *See Nw. Med.*, 151 P.3d 434, 436 (Alaska 2006).

[18] *Plumber*, 936 P.2d at 167 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2)).

[19] 1 FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 41.10 (2015) (emphasis added) (footnotes omitted).

doctrine, premised on the court's ability to look past the 'legal fiction' to do equity."[20] It would not be equitable to require that every party adverse to a corporation either investigate whether it is necessary and appropriate to pierce the corporation's veil during its original action or else risk later being barred from collecting the judgment it achieves from shareholders who have abused the corporate form.

Other courts that have considered this question have held that veil piercing should not be barred by res judicata.[21] The Supreme Court of Texas explained that using this doctrine to prevent collection of a judgment "would be to pervert the sanctity of judgments, not preserve them."[22] A federal district court explained that "[t]o hold that the plaintiff could not bring a second suit asserting veil-piercing claims to collect their judgment would protect individuals who fraudulently transfer assets from a corporation to avoid judgments against them."[23] And another federal district court rejected the argument Pister advances because it "would also logically imply that *all* post-judgment veil-piercing claims against a corporation's owners are barred by res judicata because

---

[20] *Brown v. Knowles*, 307 P.3d 915, 928 (Alaska 2013).

[21] *See* Glenn M. Gottlieb, *Res Judicata and Collateral Estoppel Beneath the Corporate Veil*, 66 CAL. L. REV. 1093, 1096 (1978) ("A finding of corporate liability in a suit against the corporation alone has traditionally not been considered to merge the plaintiff's entire cause of action into the judgment. Thus, the plaintiff may bring a subsequent suit against the owner, claiming that he should be held individually liable for the corporate obligation.") (footnote omitted). Indeed, some "courts have *required* a prior judgment against a corporation before considering an action to pierce a corporate veil." 1 FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 41.28.70 (emphasis added).

[22] *Matthews Constr. Co. v. Rosen*, 796 S.W.2d 692, 694 (Tex. 1990).

[23] *JNS Aviation, Inc. v. Nick Corp.*, 418 B.R. 898, 910-11 (N.D. Tex. 2009).

those owners are necessarily in privity with the corporation against which the judgment was rendered."[24]

We are persuaded by the reasoning of these courts, which is consistent with the purposes served by claim preclusion. We therefore conclude that res judicata does not bar the State's suit to collect Northwest Medical's tax debt from Pister personally.

### 2. We have not previously decided which law Alaska courts should apply to suits to pierce the veils of foreign corporations.

Pister argues that the superior court erred by ruling that Alaska law controls whether Northwest Medical's corporate veil should be pierced. He argues that Washington law, as the state of incorporation, should apply instead. The State responds by arguing that we have already decided this issue by applying Alaska law in veil-piercing cases involving foreign corporations.

We disagree with the State's characterization of our earlier decisions. In one of the cases the State cites we concluded that the choice-of-law issue had been waived at trial.[25] In another we affirmed an order piercing the veils of two corporations, one incorporated in Oregon and the other in Alaska, using Alaska law, but there is no indication that any party argued that Oregon law should apply.[26] Neither case[27] decided

---

[24] *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 524 (S.D.N.Y. 2014).

[25] *See Nerox Power Sys., Inc. v. M-B Contracting Co.*, 54 P.3d 791, 802 n.45 (Alaska 2002).

[26] *See Eagle Air, Inc. v. Corroon & Black/Dawson & Co. of Alaska, Inc.*, 648 P.2d 1000, 1002-04 (Alaska 1982).

[27] The State also cites two cases that do not involve attempts to pierce corporate veils but instead cite veil-piercing doctrine as an analogy for distinct questions of corporate unity. *See Croxton v. Crowley Mar. Corp.*, 817 P.2d 460, 464-66 (Alaska

(continued...)

what law Alaska courts should apply to veil-piercing claims brought against foreign corporations.

Courts across the country have reached different conclusions about the proper law to apply when veil-piercing claims are brought against foreign corporations.[28] Some apply the law of the state of the incorporation in every case.[29] Others apply more general choice-of-law principles, such as an evaluation of the states' respective interests.[30] Because we hold that the superior court's findings justify piercing Northwest Medical's corporate veil under both Alaska and Washington law, we do not need to decide this question in this appeal.

---

[27](...continued)
1991) (construing the reach of the Alaska Workers' Compensation Act); *Volkswagenwerk, A.G. v. Klippan, GmbH*, 611 P.2d 498, 505-06 (Alaska 1980) (construing the scope of a contract's forum selection clause). Our citation of Alaska veil-piercing law in these cases involving foreign corporations does not decide the issue before us.

[28]      *See* 1 FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS, *supra* note 19, § 43.72.

[29]      *See, e.g.*, *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132-33 (2d Cir. 1993) (applying New York choice-of-law principles).

[30]      *See, e.g.*, *TAC-Critical Sys., Inc. v. Integrated Facility Sys., Inc.*, 808 F. Supp. 2d 60, 64-65 (D.D.C. 2011) (citing Gregory Scott Crespi, *Choice of Law in Veil-Piercing Litigation: Why Courts Should Discard the Internal Affairs Rule and Embrace General Choice-of-Law Principles*, 64 N.Y.U. ANN. SURV. AM. L. 85 (2008)).

**3.** **The superior court's findings justify piercing Northwest Medical's corporate veil under both Alaska and Washington law.**

**a.** **Alaska veil-piercing law**

Alaska law provides that although corporate veils should be pierced "only in exceptional circumstances,"[31] it is appropriate to do so "if the corporate form is used to defeat public convenience, justify wrong, commit fraud, or defend crime."[32] The misconduct standard of veil piercing "exists to prevent a party from obtaining an advantage through deceptive or manipulative conduct."[33]

The superior court partially based its finding of misconduct sufficient to justify piercing the corporate veil on the way that Pister used Northwest Medical's corporate form to avoid paying corporate and personal taxes. Northwest Medical purportedly rented two offices from a family partnership Pister controlled, Northwest Homestead Limited Partnership (Homestead), and deducted this rent as a business expense. But the Office of Tax Appeals disallowed this deduction, in part because Northwest Medical "failed to provide *any* documentation to show that rent was actually paid to anyone." The superior court examined this matter further and found that the rent Northwest Medical claimed as a deduction significantly exceeded Homestead's underlying mortgage and lease payments, frequently resulting in rent deductions that were double or triple Homestead's actual costs. The rent amounts also varied dramatically year to year and seemed to reflect Northwest Medical's earnings, rather than the properties' value. Most importantly, Homestead was a flow-through entity that did

---

[31]     *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1125 (Alaska 2009).

[32]     *Id.* (quoting *Elliott v. Brown*, 569 P.2d 1323, 1326 (Alaska 1977)).

[33]     *Elliott*, 569 P.2d at 1326.

not itself file tax returns, and Pister did not report the full amount of Northwest Medical's purported payments, or in some years *any* payments, as rental income on his personal income taxes.

These findings, which Pister does not meaningfully contest, form a sufficient basis to affirm the superior court's order piercing Northwest Medical's corporate veil. As one treatise puts it, "[t]he guiding principle concerning observance or disregard of the [corporate] entity in tax matters is the protection of the government against tax evasion."[34] Pister structured a rent deal between his corporation and his family partnership to artificially reduce the corporation's earnings without increasing his personal tax liability. By doing so he manipulated the corporate form to evade both state and federal taxes. Exploiting a corporation's balance sheet to camouflage tax evasion is exactly the type of misconduct that forfeits the protection of limited liability for corporate debts.[35] We therefore affirm the superior court's order piercing Northwest Medical's corporate veil under Alaska's misconduct standard.[36]

---

[34] 1 FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS, *supra* note 19, § 45.10 (footnote omitted).

[35] *See L.D.G., Inc.*, 211 P.3d at 1126-27 ("The inferences regarding manipulations of the corporate form to avoid taxes . . . are also sufficient to create a jury question on whether [a corporation's individual owner] violated the misconduct standard — that is, whether he used the corporate form . . . 'to defeat public convenience, justify wrong, commit fraud, or defend crime.' " (quoting *Uchitel Co. v. Tel. Co.*, 646 P.2d 229, 234 (Alaska 1982))).

[36] Because the misconduct standard was met, we do not evaluate the superior court's alternative ruling that Northwest Medical's corporate veil could be pierced under the mere instrumentality standard. "The relation between the theories is disjunctive, not conjunctive," *Brown v. Knowles*, 307 P.3d 915, 929 (Alaska 2013), and "[t]he primary consideration in determining whether to pierce the corporate veil is whether the corporate form has been abused by the person sought to be charged." *Gold Dust Mines, Inc. v.*
(continued...)

### b.    Washington veil-piercing law

Washington law provides that "to pierce the corporate veil the plaintiff must show that the corporate form was used to violate or evade a duty and that the corporate veil must be disregarded in order to prevent loss to an innocent party."[37]  "With regard to the first element, the court must find an abuse of the corporate form."[38]  This "typically involves 'fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment.' "[39]  "With regard to the second element, wrongful corporate activities must actually harm the party seeking relief so that disregard is necessary.  Intentional misconduct must be the cause of the harm that is avoided by disregard."[40]

Pister argues that the second element of Washington veil-piercing law is not met here because the superior court ruled that Skyrad is liable for Northwest Medical's tax debt, a ruling that neither Pister, nor Northwest Medical, nor Skyrad appeals.  His view is that because "the State has a remedy [against Skyrad]," it is "not necessary to

---

[36](...continued)

*Little Squaw Gold Mining Co.*, 299 P.3d 148, 169 (Alaska 2012) (quoting *Murat v. F/V Shelikof Strait*, 793 P.2d 69, 76 (Alaska 1990)) (internal quotation marks omitted).

[37]    *Chadwick Farms Owners Ass'n v. FHC LLC*, 207 P.3d 1251, 1262 (Wash. 2009).

[38]    *Meisel v. M & N Modern Hydraulic Press Co.*, 645 P.2d 689, 692 (Wash. 1982).

[39]    *Id.* (quoting *Truckweld Equip. Co. v. Olson*, 618 P.2d 1017, 1021 (Wash. App. 1980)).

[40]    *Id.* at 693.

disregard Northwest's corporate form," and therefore Washington law would not permit veil piercing.[41]

But this misconstrues the second element of Washington veil-piercing law. Washington courts have not described this second element as a requirement that the courts pursue every possible path to making a victim whole before piercing the corporate veil. Instead, one appellate court recently described the second element as "focus[ing] on the nexus between the abuse of the corporate form and the injury the plaintiff claims justifies the disregard of the corporate form."[42] This is a persuasive interpretation of Washington law, which contains no suggestion that successor liability and veil piercing are mutually exclusive.[43]

The nexus requirement under Washington law is met in this case. Pister abused Northwest Medical's corporate form by having the corporation pay elevated and inconsistent rents to Homestead and then deduct these amounts as business expenses. This impermissibly reduced Northwest Medical's corporate tax liability, which is "the

---

[41] It is hardly clear that the State actually could collect the tax debt from Skyrad. As the State noted at oral argument, Skyrad has not paid the debt even though it did not appeal the finding of successor liability and doing so would end the State's efforts to collect the judgment from Pister personally.

[42] *Landstar Inway, Inc. v. Samrow*, 325 P.3d 327, 339 (Wash. App. 2014). This description of the second element is consistent with one commentator's view that the second element asks "if any of the wrongful corporate activities actually harmed the party seeking relief." Thomas V. Harris, *Washington's Doctrine of Corporate Disregard*, 56 WASH. L. REV. 253, 261 (1981). The Washington Supreme Court has cited this analysis approvingly. *See Meisel*, 645 P.2d at 692.

[43] *See, e.g.*, *Meisel*, 645 P.2d at 692 ("While the results of successor liability and corporate disregard theories are often the same, the inquiries are conceptually distinct.").

injury the [State] claims justifies the disregard of the corporate form."[44]   Under Washington law, "disregard is necessary" in this case, notwithstanding Skyrad's concurrent liability for the same debt on a different theory.

The first element of Washington veil-piercing law is also met in this case. As discussed above, Pister does not convincingly rebut the superior court's finding that he structured a rent deal between his corporation and his family partnership to artificially reduce the corporation's earnings without increasing his personal tax liability.  This action fits easily within Washington's definition of abuse of the corporate form: "fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment."[45]  We therefore conclude that the superior court's order provided a proper basis for piercing Northwest Medical's corporate veil under Washington law.

## B.     The Superior Court's Finding That Two Contracts Were Fraudulently Conveyed Was Clearly Erroneous.

The superior court ordered that "[t]he transfers of the ANHS contract and Maniilaq contract are null and void" because it found that they had been fraudulently conveyed from Northwest Medical to Skyrad.  Because we affirm the superior court's decision to hold Pister personally liable for Northwest Medical's tax debt to the State and because Pister and Skyrad did not appeal Skyrad's liability for the same debt as a successor corporation, the continuing effect of this ruling as an independent avenue of relief is uncertain.  But to the extent the superior court's decision to void the transfers remains a live issue, we address the ruling.

---

[44]     *Landstar Inway*, 325 P.3d at 339.

[45]     *Truckweld Equip. Co. v. Olson*, 618 P.2d 1017, 1021 (Wash. App. 1980).

## 1. The ANHS contract

The first contract that the superior court concluded was fraudulently conveyed was between Northwest Medical and the Alaska Area Native Health Service (ANHS), a federal agency. The contract was signed on October 1, 1993, and at that point it required ANHS to pay Northwest Medical $412,515 for one year of monthly radiological services at four clinics. The contract was then extended six times and modified twice. With each extension the contract price changed: to $618,515 in October 1994, $959,955 in September 1995, $1,119,955 in October 1996, $1,239,955 in March 1997, $1,389,955 in September 1997, and finally $1,471,955 in April 1998. At trial Pister testified that the contract expired in early 1999.

The superior court rejected Pister's explanation and instead accepted the State's view that "[i]n November, 2000, that contract was still in existence and worth over 1.4 million dollars." The superior court concluded that Pister had conveyed the ANHS contract but "received no consideration" for it. The superior court faulted Pister because Northwest Medical's "ledger for 1998 does not reflect receipts totaling anywhere near 1.4 million dollars, nor do the ledgers for 1999 or 2000." But this is exactly what one would expect if the April 1998 contract extension was the final extension — some amount of income from ANHS each year from 1993 through 1999, *totaling* 1.4 million dollars, not a 1.4 million dollar payout at the contract's conclusion.

The superior court bolstered its view that Pister had somehow acquired the ANHS contract for his own use rather than selling it to satisfy Northwest Medical's debts by reference to Pister's 2002 testimony before the Office of Tax Assessment, in which he stated that the ANHS contract is "now in my name." But looking at that testimony in context indicates that the superior court may have misunderstood it. When Pister testified that "[t]he contract is now in my name," he did so in response to a question that asked him to identify the differences between the ANHS contract and an earlier contract,

which had not been in his name. He was not testifying that as of the date of his testimony the ANHS contract had been placed in his name rather than Northwest Medical's but instead was contrasting it with a prior contract that had different contracting parties. This is perfectly consistent with Pister's testimony at this trial "that the contract expired 'long before' 2000, and therefore the word 'now' did not refer to the year 2002."

The State's defense of this ruling is unpersuasive. It may be true that "nothing in the record shows that the contract could not have been further extended via other documents that were not produced at trial." But the superior court's findings were not based on the possibility that there were further contract extensions outside of the record. Instead, its ruling was based on the "missing" 1.4 million dollars and Pister's 2002 testimony. Because both of these bases were unfounded the superior court's findings regarding the ANHS contract are not supported by the record, which clearly demonstrates that rather than being fraudulently conveyed, this contract expired.

### 2.    The Maniilaq contract

The second contract that the superior court concluded was fraudulently conveyed was between Northwest Medical and the Maniilaq Medical Center in Kotzebue. This contract began in October 1997 as a three-year contract for radiology services, and it provided that it would be "automatically renewed for another three-year term" unless either party notified the other prior to its expiration that the contract would not be renewed.

In July 2000, prior to the contract renewal date, Pister told Maniilaq that Northwest Medical would not renew the contract. He then had it valued by Northwest Medical's accountant, Thomas Swanson, who calculated its current value as $4,367 (based on expected revenues of $18,000 for the one month remaining) in a September 2000 letter. Later in September Pister's new corporation, Skyrad, transferred

$4,367 to Northwest Medical and Pister told Maniilaq that he had "recently elected to transfer the contract . . . to Skyrad," and asked them to make all future checks out to Skyrad. Pister then executed a new three-year contract between Maniilaq and Skyrad.

The superior court ruled that this transfer was a reduction of Northwest Medical's assets that served to capitalize Skyrad. The court calculated that, valued as a three-year contract, the Maniilaq contract was worth $648,000, that is, $18,000 in monthly value multiplied by 36 months. It suggested that the contract could have been sold for this amount to an unrelated company, and that the resulting funds could have paid Northwest Medical's tax debts. The court also suggested that the transfer to Skyrad might have been made with an eye to Northwest Medical's dissolution defense, first raised in November 2000, and the subsequent danger of Northwest Medical's corporate veil being pierced and Pister being held personally liable for its tax debts.

Pister argues that the superior court's valuation was flawed because it conflated the revenue a contract is expected to produce with the contract's value. We agree. A service contract's value must be calculated by reference not just to the revenue it will produce but also to the cost of performing the required services. Therefore, the superior court's conclusion that Northwest Medical could have sold the Maniilaq contract for $648,000 was incorrect.

This error does not necessarily mean that the Maniilaq contract was lawfully conveyed. Northwest Medical's accountant calculated the contract's value as if it were a month from expiration. But the contract provided for automatic renewal of another three-year term, and indeed Skyrad performed the same contract after Pister, in his own words, "elected to transfer the contract" to his new corporation. Just as proper contract valuation must distinguish between revenue and value, it must also account for the likelihood that the contract will be extended. Pister's sale price for the Maniilaq contract did not properly account for the likelihood of renewal.

Although there was clear error in this portion of the superior court's findings, we cannot decide whether the Maniilaq contract was fraudulently conveyed on the record before us on appeal. Therefore, if the conveyance of this contract becomes material to the State's ability to satisfy the judgment against Pister, Northwest Medical, and Skyrad, the superior court will need to make additional findings with respect to the adequacy of the consideration exchanged in light of the proper valuation of the contract when it was sold and the other circumstances surrounding the sale.

## V.  CONCLUSION

We REVERSE the superior court's fraudulent conveyance decision and remand only to the extent that the conveyance of the Maniilaq contract becomes material to the State's ability to satisfy its judgment. We AFFIRM the superior court's order in all other respects.