**SOUTH PENINSULA HOSPITAL, Alaska Speech and Language Clinic, Inc. and Kenai Vision Center, LLC, on behalf of themselves and others similarly situated, Plaintiffs,**

v.

**XEROX STATE HEALTHCARE LLC, Defendant.**

**Case No. 3:15–cv–00177–TMB**

United States District Court, D. Alaska.

Signed 09/30/2016

Arthur Stock, Lane Lanier vines, Sherrie Raiken Savett, Peter R. Kahana, Yechiel M. Twersky, Berger & Montague, P.C., Philadelphia, PA, Peter Reed Ehrhardt, Law Office of Peter Ehrhardt, Kenai, AK, for Plaintiffs.

Jennifer Klein Ayers, Ravi S. Deol, Steven G. Schortgen, K & L Gates LLP, Dallas, TX, Jennifer M. Coughlin, K & L Gates LLP, Anchorage, AK, for Defendant.

## ORDER RE: DEFENDANT'S MOTION TO DISMISS

### TIMOTHY M. BURGESS, UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is now before the Court on Defendant Xerox State Healthcare, LLC's ("Xerox") Motion to Dismiss Plaintiff's First Amended Complaint. The Court heard oral argument on Xerox's motion on June 29, 2016.[1] Based on the arguments presented in the parties' briefs and at oral argument, and for the reasons that follow, the Court **DENIES** Xerox's motion to dismiss at docket 35.

### II. BACKGROUND

#### a. Procedural History

Plaintiffs South Peninsula Hospital ("South Peninsula"), Alaska Speech and Language Clinic, Inc. ("Alaska Speech"), and Kenai Vision Center, LLC ("Kenai Vision") initiated this action on September 24, 2015, on behalf of themselves and all others similarly situated.[2] On January 15, 2016, Plaintiffs filed their First Amended Complaint ("FAC"), alleging violations of the Alaska Unfair Trade Practice and Consumer Protection Act (Count One) and negligence and/or reckless indifference (Count Two).[3] In relief, Plaintiffs seek monetary damages to compensate them-

---

1. *See* Dkt. 50.

2. Dkt. 1.

3. Dkt. 34 at ¶¶ 120–129 (Count One), ¶¶ 130–136 (Count Two).

selves and other Medicaid providers for financial injuries they suffered due to delayed reimbursements caused by defects in the State of Alaska's Medicaid payment system, which Xerox designed, developed, and implemented.[4]

Xerox moved to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) on February 8, 2016.[5] Plaintiffs filed their opposition on March 3, 2016,[6] and Xerox replied on March 21, 2016.[7] In addition to their briefing, Xerox submitted several affidavits and exhibits in support of its position regarding the exhaustion of administrative remedies and this Court's subject matter jurisdiction over the claims in this action.

### b. Factual Background

Among other things, the FAC alleges that:

*The parties.* Plaintiffs are all healthcare providers enrolled in Medicaid who submitted claims for reimbursement for Medicaid services from October 1, 2013 to present using the State of Alaska's Medicaid Management Information System ("MMIS").[8] The current version of Alaska's MMIS is called "Healthcare Enterprise." [9]

Xerox is a limited liability company based in Atlanta, Georgia and with an office in Anchorage, Alaska.[10] As the successor to Affiliated Computer Services State Healthcare, LLC ("ACS"), Xerox was responsible for the design, development, and implementation of Healthcare Enterprise.[11]

*Health Enterprise.* Alaska's Medicaid program is administered by the Alaska Department of Health and Social Services ("DHSS").[12] The Alaska Medicaid system serves more than 140,000 low-income or disabled Alaskans.[13] Through this system, DHSS pays out approximately $1.5 billion annually in state and federal money to Medicaid providers.[14]

Alaska's original MMIS was established in 1987 to process and pay Medicaid claims.[15] In November 2006, DHSS issued a Request for Proposals ("RFP") to replace the original MMIS.[16] Among other things, the RFP required that the new MMIS meet all federal Medicaid requirements and state healthcare mandates; permit timely processing of Medicaid claims from health care providers, whether those claims were submitted electronically or on federally approved paper forms; and provide prompt payment of authorized claims.[17]

DHSS' contract for the new MMIS contemplated three phases: (1) design, devel-

---

**4.** *Id.* at ¶¶ 1–2; *see also id.* at 27 (stating Plaintiffs are seeking actual and statutory damages "for excess costs associated with resubmitting valid claims; costs of disputing erroneous denials; and lost time value of money for payments that were unreasonably delayed").

**5.** Dkt. 35.

**6.** Dkt. 39.

**7.** Dkt. 40.

**8.** Dkt. 34 at ¶ 3.

**9.** *Id.* at ¶ 3.

**10.** *Id.* at ¶ 29.

**11.** *Id.*

**12.** *Id.* at ¶ 34.

**13.** *Id.* at ¶ 38.

**14.** *Id.*

**15.** *Id.* at ¶ 37.

**16.** *Id.* at ¶ 39.

**17.** *Id.* at ¶¶ 39–41; *see also id.* at ¶¶ 44–47, 50.

opment, and implementation of the new MMIS; (2) operation of the MMIS, including its data warehouse and decision support system; and (3) turnover of the MMIS to DHSS or its contractor upon completion of performance.[18] In 2007, DHSS awarded the MMIS contract to ACS.[19] Section A.13 of the contract expressly states that ACS is an independent contractor for the State.[20] Section A.22 states that the contract "is for the sole benefit of the parties hereto and not for the benefit of any third party."[21] Xerox became ACS' successor-in-interest to the contract when it acquired ACS.[22]

*"Go-live" crisis.* After a series of delays, Health Enterprise went live on October 1, 2013.[23] As of the "go-live" date, electronic and paper claims could be submitted by Medicaid providers only through Health Enterprise and not through the old MMIS.[24] Plaintiffs allege that DHSS agreed to the "go-live" date based on its reasonable reliance on misrepresentations made by Xerox about the readiness of Health Enterprise to process healthcare providers' Medicaid claims, including that Xerox had performed extensive "system testing" on the MMIS to confirm that the system met the essential requirements necessary to "go live."[25]

Almost immediately after Health Enterprise went live, it became clear that the system was not able to perform the func-

tions required of it under the MMIS contract.[26] The system, for example, was unable to process many properly submitted claims, erroneously denied authorized claims, and failed to pay certain entire categories of claims.[27] Because of these and other material system defects about which Plaintiffs allege Xerox knew or should have known, Medicaid providers were prevented from receiving timely reimbursements on properly submitted, valid claims.[28]

Those delayed reimbursements resulted in financial harms to Medicaid providers, including loss of the time value of money, increased operational costs expended to recover backlogged payments, business injury due to interruption of cash flow, and even going out of business.[29] Plaintiffs allege that these financial harms were a foreseeable consequence of Xerox's failure to produce a properly functioning MMIS by the "go-live" date and its misrepresentations to the State that the MMIS was ready to go live when it was not.[30]

Because of the number and degree of delayed reimbursements caused by material defects with Health Enterprise, the State has issued advance payments to Medicaid providers for valid claims that were erroneously denied or suspended.[31] These payments were made without first requiring Medicaid providers to resort to

---

18. *Id.* at ¶ 42.

19. *Id.* at ¶ 48.

20. *Id.* at ¶ 48; Dkt. 36–2 at 15.

21. Dkt. 36–2 at 20.

22. Dkt. 34 at ¶ 49.

23. *Id.* at ¶ 55.

24. *Id.* at ¶ 58.

25. *Id.* at ¶ 8.

26. *Id.* at ¶¶ 9, 59.

27. *Id.* at ¶ 134.

28. *Id.* at ¶¶ 9, 134.

29. *Id.* at ¶¶ 15–16, 62.

30. *Id.* at ¶ 28.

31. Dkt. 24–1 at ¶ 32.

any administrative review process.[32] After issuing advance payments to providers, the State brought suit against Xerox, seeking specific performance, declaratory relief, injunctive relief, and damages as a result of "Xerox's defective MMIS and its failure to remedy the defects."[33]

*Class action allegations.* Plaintiffs bring this action for negligence and unfair trade practices on behalf of themselves and, pursuant to Fed. R. Civ. P. 23, on behalf of a putative class defined as "[a]ll Alaska-enrolled Medicaid healthcare providers who submitted a claim for reimbursement from October 1, 2013 to the present whose payment was identified by the State as having been suspended or denied in error by the State's [MMIS], and was subsequently paid by the State."[34]

### III. LEGAL STANDARD

Xerox seeks dismissal of Plaintiffs' claims pursuant to Rule 12(b)(1) and Rule 12(b)(6). When faced with a challenge to its subject matter jurisdiction under Rule 12(b)(1), a court must resolve that issue before determining whether a complaint states a cause of action under Rule 12(b)(6).[35]

█ Rule 12(b)(1) allows a party to move to dismiss an action at any stage in the litigation for lack of subject matter jurisdiction. If a court determines at any time, whether by suggestion of the parties or otherwise, that it lacks subject matter jurisdiction, "the court must dismiss the action."[36] Under Alaska law, "[c]ourts are without jurisdiction over a case where statutory exhaustion requirements have not been complied with."[37,38]

Under Rule 12(b)(6), dismissal is appropriate if a plaintiff's complaint fails to state a claim upon which relief can be granted. Under the "facial plausibility" pleading standard set forth by the Supreme Court in *Ashcroft v. Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[39] For purposes of Xerox's 12(b)(6) argument to dismiss the FAC, the Court accepts as true the material factual allegations contained in the FAC and draws all reasonable inferences in Plaintiffs' favor, as the non-moving parties.[40]

While a court is limited in its review of a motion pursuant to Rule 12(b)(6) to the factual allegations contained in the complaint, no such limitation exists as to Rule 12(b)(1), and the Court will consider matters outside of the FAC.[41]

---

**32.** Dkt. 34 at ¶ 20.

**33.** Dkt. 34 at ¶ 67; Dkt. 34–1.

**34.** Dkt. 34 at ¶ 109.

**35.** *Alaska v. Kerry*, 972 F.Supp.2d 1111, 1120 (D. Alaska 2013) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

**36.** Fed. R. Civ. P. 12(h)(3).

**37.** *Standard Alaska Prod. Co. v. Alaska Dep't of Revenue*, 773 P.2d 201, 210 (Alaska 1989) (citing *Marathon Oil Co. v. United States*, 807 F.2d 759, 768 (9th Cir. 1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987)).

**38.** *See City of Oakland, Cal. v. Hotels.com LP*, 572 F.3d 958, 960 (9th Cir. 2009) (applying California exhaustion requirements, where claims related to state law and procedure).

**39.** 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

**40.** *Rouse v. U.S. Dep't of State*, 567 F.3d 408, 411 (9th Cir. 2009) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

**41.** *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (noting that a district court may review evidence beyond the complaint without converting a motion to dis-

## IV. DISCUSSION

In its motion to dismiss, Xerox argues that Plaintiffs' claims should be dismissed because Plaintiffs failed to exhaust administrative remedies; because Xerox, as the State's fiscal agent, is immune from suit; and because Plaintiffs' negligence and Alaska Unfair Trade Practices Act ("UTPA") claims fail as a matter of law. Xerox further argues that Plaintiffs' class action demand fails as a matter of law and should be stricken. The Court addresses each argument in turn, beginning, as it must, with Xerox's exhaustion challenge.

### a. Exhaustion

■ Xerox argues, as a threshold matter, that the Court lacks subject matter jurisdiction to hear Plaintiffs' claims because Plaintiffs failed to exhaust administrative remedies, and must therefore dismiss this case. Plaintiffs contend that they were not required to submit their claims for administrative review because the State voluntarily authorized payment for the delayed reimbursements at issue in this case without first requiring administrative review.

■ Under Alaska law, a party typically "may not seek relief in a judicial forum until that party has exhausted his or her available administrative remedies." [42] To determine if a complaint should be dismissed for failure to exhaust administrative remedies, a court must decide "whether (a) exhaustion of remedies was required; (b) the [plaintiff] exhausted those remedies; and (c) the failure to exhaust remedies was excused." [43] In general, exhaustion is required if a statute or regulation provides for administrative review.[44] If, however, a court finds no effective remedy is available, "it will generally be an abuse of discretion to require exhaustion of remedies." [45]

The Alaska Administrative Code ("AAC") provides for a two-tiered administrative review process for resolving Medicaid payment disputes. Specifically, 7 AAC 105.270 permits a provider to request a first-level appeal of "a denied or reduced claim or service," [46] "a noncertification of hospital admission or length of stay," [47] "a decision that denied or reduced prior authorization," [48] "a noncertification decision regarding a service that . . . requires certification," [49] "a recoupment of overpayment notice," [50] and "the denial or disenrollment [of a provider from Medicaid]." [51] If a provider is not satisfied with the first-level appeal decision, the provider may appeal

miss pursuant to Rule 12(b)(1) into a motion for summary judgment); *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (same). Xerox confirmed at oral argument that it is presenting a factual challenge to the Court's subject matter jurisdiction. *See* Dkt. 50 (minute entry re: oral argument).

42. *Seybert v. Alsworth*, 367 P.3d 32, 36 (Alaska 2016) (quoting *Winterrowd v. State, Dep't of Admin., Div. of Motor Vehicles*, 288 P.3d 446, 450 (Alaska 2012)).

43. *Winterrowd*, 288 P.3d 446, 450 (Alaska 2012); *accord RBG Bush Planes, LLC, v. Kirk*, 340 P.3d 1056, 1061 (Alaska 2015).

44. *Seybert*, 367 P.3d at 36; *RBG Bush Planes*, 340 P.3d at 1061.

45. *Pepper v. Routh Crabtree, APC*, 219 P.3d 1017, 1020 (Alaska 2009).

46. 7 AAC 105.270(a).

47. 7 AAC 105.270(c).

48. 7 AAC 105.270(d).

49. 7 AAC 105.270(e).

50. 7 AAC 105.270(f).

51. 7 AAC 105.270(g).

that decision to DHSS.[52] DHSS' decision on the second-level appeal is a final administrative decision.[53] Citing the AAC, Xerox maintains that this action must be dismissed because Plaintiffs failed to raise their negligence and Alaska UTPA claims, in the first instance, through the administrative process.[54]

But Xerox's argument mischaracterizes Plaintiffs' complaint, as confirmed and clarified during oral argument.[55] Plaintiffs bring this lawsuit against Xerox not to recover reimbursement amounts for denied claims, but rather to recover for the financial injuries they suffered as the result of reimbursements that were significantly delayed due to defects in Health Enterprise—reimbursements the State has acknowledged as having been delayed due to technical system defects caused by Xerox's conduct in designing, developing, and prematurely implementing Health Enterprise *and paid*. In other words, this is not a case about denied claims, but rather valid, properly submitted claims that were paid, but paid late. These facts distinguish this case from the decisions cited by Xerox, and take it outside the reach of the administrative review process set forth in 7 AAC 105.270 and 7 AAC 105.280.[56] As such, Xerox's 12(b)(1) argument based on failure to exhaust is denied.[57]

### b. Immunity

■ Xerox contends that the FAC must be dismissed in its entirety for the additional reason that it is the State's fiscal agent and therefore entitled to invoke sovereign immunity against actions such as this one. Plaintiffs contend that Xerox is not a fiscal agent of the State, but rather an independent contractor, and as such cannot cloak itself in the State's sovereign immunity.

■ "The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities."[58] State sovereign immunity is also intended to protect state treasuries from suit.[59] In the Ninth Circuit, "an entity invoking Eleventh Amendment immunity bears the burden of asserting and proving those matters necessary to establish its defense."[60]

In *Del Campo v. Kennedy*, the Ninth Circuit considered the extension of state

52. 7 AAC 105.280(a).

53. 7 AAC 105.280(e).

54. In its motion to dismiss, Xerox notes that neither Alaska Speech nor Kenai Vision has appealed a claim denied or suspended under Health Enterprise, and that South Peninsula has appealed only 244 of 12,363 denials. Dkt. 35 at 25.

55. To the extent the Court misunderstands Plaintiffs' theory of liability, the issue of exhaustion may need to be revisited.

56. *See Hymes v. DeRamus*, 222 P.3d 874, 881 (Alaska 2010) ("The decision whether exhaustion of remedies should apply to a given situation should be based on the particular case before the court.").

57. The Court agrees with Xerox that Plaintiffs may recover only for financial loss caused by reimbursements that were delayed due to system defects and not for any time or expense spent resubmitting claims that were delayed due to provider error. See Dkt. 35 at 28–29. That issue, however, strikes the Court as a damages issue rather than an exhaustion issue.

58. *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002).

59. *Del Campo v. Kennedy*, 517 F.3d 1070, 1075 (9th Cir. 2008) (citing *Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994)).

60. *In re Lazar*, 237 F.3d 967, 974 (9th Cir. 2001)(citing *Hill v. Blind Indus. & Servs. of Md.*, 201 F.3d 1186 (9th Cir. 1999)).

sovereign immunity to independent contractors. In that case, Del Campo sued American Corrective Counseling Services ("ACCS"), a private company that had contracted with the Santa Clara County District Attorney to run a bad check diversion program, under various state and federal laws.[61] ACCS claimed that it was entitled to state sovereign immunity as an arm of the state in implementing the check diversion program for the government.[62] The district court held that ACCS was not entitled to state sovereign immunity and ACCS filed an interlocutory appeal.[63] The Ninth Circuit affirmed, holding "[e]xtending state sovereign immunity to private entities is, as we now make clear, not supported by our law, by relevant Supreme Court cases, or by the cases of the other circuits to have considered similar questions." [64]

Plaintiffs in this case argue that the holding in Del Campo controls, and that Xerox is not entitled to state sovereign immunity. Plaintiffs highlight similarities in the contract language between ACCS and the government in Del Campo, which Plaintiff claims is nearly identical to the contract language between Xerox and DHHS.[65] Like the contract in Del Campo, the Xerox–DHSS contract makes clear that Xerox is an independent contractor,[66] requires Xerox to indemnify DHSS,[67] and requires Xerox to carry its own insurance.[68]

Xerox argues that Del Campo is distinguishable, that it should be considered the State's fiscal agent, and that as the State's fiscal agent, it merely "processes and pays provider claims on behalf of the department," [69] while DHSS controls all other relevant aspects related to reimbursement of Medicaid service providers.[70] But Xerox's argument here ignores the Ninth Circuit's analysis in Del Campo. The Ninth Circuit noted that the question of whether a contractor is entitled to state sovereign immunity turns on the contractor's "nature as a private entity rather than some quirk of its contract, its behavior, or the allegations brought against it." [71] Thus, the proper focus of the state sovereign immunity analysis is not on the nature of the Plaintiffs' claims and alternative remedies, as Xerox argues, but rather on the nature of Xerox as a private entity.

Applying this framework, Xerox is an independent contractor that has contracted with DHSS to "build and operate the new Health Enterprise system," as well as provide other services related to the State's Medicaid program.[72] Xerox is not a state agency, nor has DHSS indemnified Xerox. The possibility that a private entity has contracted to perform a central governmental function will not be sufficient to convey sovereign immunity.[73] The Ninth Circuit has made clear its extreme hesitance "to extend this fundamental and carefully limited immunity to private parties whose only relationship to the sover-

61. *Del Campo*, 517 F.3d at 1071.

62. *Id.* at 1074.

63. *Id.*

64. *Id.* at 1075.

65. Dkt. 39 at 35.

66. Dkt. 30-3 at 15.

67. *Id.* at 21–22.

68. *Id.* at 22–23.

69. Dkt. 35 at 42.

70. *Id.* at 42–43.

71. *Del Campo*, 517 F.3d at 1078–79.

72. Dkt. 35 at 21.

73. *Del Campo*, 517 F.3d at 1078–79.

eign is by contract." [74] Xerox has not met its burden to assert and prove those matters necessary to establish a state sovereign immunity defense. [75]

Having resolved Xerox's exhaustion and immunity arguments, the Court turns to Xerox's 12(b)(6) arguments.

### c. Negligence

█ Count One of the FAC asserts that Xerox acted negligently and/or with reckless indifference when it failed to use reasonable care in designing and implementing Healthcare Enterprise and then falsely representing that the system was ready to go live when it was not, causing foreseeable economic injury to Plaintiffs and other Medicaid providers. [76]

 To recover under a theory of negligence in Alaska, a plaintiff "must establish (1) a duty of care; (2) breach of the duty; (3) causation; and (4) harm." [77] In deciding whether a defendant owes a plaintiff a duty of care, Alaska courts first determine whether a duty is imposed by statute, regulation, contract, or existing common law tort doctrine. [78] Absent a duty based on those sources, Alaska courts look to the seven factors set out in *D.S.W. v.*

*Fairbanks North Star Borough School District* [79] to determine whether an actionable duty exists. [80] The *D.S.W.* factors are: the foreseeability of harm to the plaintiff; the degree of certainty that the plaintiff suffered injury; the closeness of the connection between the defendant's conduct; the policy of preventing future harm; the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach; and the availability, cost, and prevalence of insurance for the risk involved. [81]

In this case, Xerox argues that Plaintiffs' negligence claim must be dismissed because the MMIS contract between the State and Xerox expressly disclaims any third party beneficiaries and, under Alaska law, a plaintiff cannot recover for pure economic loss based upon a negligence theory absent privity of contract between the plaintiff and tortfeasor. [82] Xerox's argument fails, however, because the Alaska Supreme Court has in fact recognized that, absent privity between the plaintiff and alleged tortfeasor, a plaintiff may recover for purely economic losses where a duty is

---

74. *Id.* at 1076.

75. *See* Lazar, 237 F.3d at 974.

76. Dkt. 34 at ¶¶ 130–136. Alaska law does not recognize reckless indifference as a separate cause of action, but rather as an element of enhanced damages. Alaska Stat. 09.17.020(b)(2).

77. *Silvers v. Silvers*, 999 P.2d 786, 793 (Alaska 2000) (citing *Lyons v. Midnight Sun Transp. Servs., Inc.*, 928 P.2d 1202, 1204 (Alaska 1996)); *see also Robles v. Shoreside Petroleum, Inc.*, 29 P.3d 838, 841 (Alaska 2001) (describing Alaska's two-part test of legal causation in negligence cases).

78. *Sowinski v. Walker*, 198 P.3d 1134, 1145 (Alaska 2008); *accord McGrew v. State*, 106 P.2d 319, 322 (Alaska 2005).

79. 628 P.2d 554 (Alaska 1981).

80. *Geotek Alaska, Inc. v. Jacobs Eng'g Grp., Inc.*, 354 P.3d 368, 376 (Alaska 2015).

81. *D.S.W.*, 628 P.2d at 555; *see also Geotek Alaska*, 354 P.3d at 376 (explaining that the *D.S.W.* factors "are seven public policy considerations we use to determine whether we should recognize a negligence duty not otherwise defined by law").

82. *See State for Use of Smith v. Tyonek Timber, Inc.*, 680 P.2d 1148, 1154 (Alaska 1984) (holding plaintiff's lack of privity with alleged tortfeasor precluded recovery for pure economic loss based upon a negligence theory).

owed under the *D.S.W.* factors,[83] as Xerox concedes in its reply brief.[84]

As summarized above, Plaintiffs' FAC alleges that it was foreseeable that a failure of Health Enterprise would prevent Medicaid providers from receiving timely reimbursements, which would cause substantial economic harm to those providers, and also have a direct impact and significant consequences to Alaska's Medicaid system and Medicaid patients.[85] The Court finds that these facts and circumstances, if proved true, may give rise to a duty under the *D.S.W.* factors, and accordingly denies Xerox's motion to dismiss with respect to Plaintiffs' negligence and/or reckless indifference claim.

### d. Unfair Trade Practices

■ In addition to their negligence claim, Plaintiffs allege that Xerox violated the UTPA, Alaska Stat. 45.50.471, by falsely representing that Health Enterprise was adequately tested and sufficiently operational to "go live" on October 1, 2013, when in fact it was not.[86] Xerox, however,

maintains that Plaintiffs' UTPA claim cannot go forward because Plaintiffs did not participate in any transaction with Xerox, nor are they Xerox's competitors.

The UTPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."[87] In addition to enforcement by the state attorney general, the UTPA provides a private right of action by any "person who suffers an ascertainable loss of money or property as a result of another person's act or practice declared unlawful [under the UTPA]."[88]

■ To establish a prima facie case of unfair or deceptive acts or practices under the UTPA, a plaintiff must prove two elements: "(1) that the defendant engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred."[89] An act or practice is deceptive or unfair "if it has the capacity or tendency to deceive."[90] Actual injury as a result of deception is not

---

83. *See Mattingly v. Sheldon Jackson Coll.*, 743 P.2d 356, 360 (Alaska 1987) (holding that "a defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury [or property damage], to particular plaintiffs or plaintiffs comprising an identifiable class [of persons who] defendant knows or has reason to know are likely to suffer such damages from its conduct"); *see also Geotek Alaska,* 354 P.3d at 378 (explaining that "it is clear that Alaska's courts must still consider the full panoply of *D.S.W.* factors when deciding whether an actionable duty of case exists"); *U.S. ex rel. N. Star Terminal & Stevedore Co. v. Nugget Const., Inc.,* 445 F.Supp.2d 1063, 1076 (D. Alaska 2006) (*"Mattingly* ... stands for the proposition that a party that is only economically injured can nonetheless sue for negligence, so long as a duty exists.").

84. Dkt. 40 at 19.

85. *See* Dkt. 34 at ¶¶ 50, 133.

86. *Id.* at ¶¶ 120–129.

87. Alaska Stat. 45.50.471(a); *see also Donahue v. Ledgends, Inc.,* 331 P.3d 342, 353 (Alaska 2014) (noting UTPA was "designed to meet the increasing need in Alaska for the protection of consumers as well as honest businessmen from the depredation of those persons employing unfair or deceptive trade practices" (citations omitted)).

88. Alaska Stat. 45.50.531(a); accord *Alaska Interstate Const., LLC v. Pacific Diversified Investments, Inc.,* 279 P.3d 1156, 1162 (Alaska 2012).

89. *State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 534 (Alaska 1980).

90. *ASRC Energy Servs. Power and Commc'ns, LLC v. Golden Valley Elec. Ass'n, Inc.,* 267 P.3d 1151, 1159 (Alaska 2011) (quoting *O'Neill Investigations,* 609 P.2d at 524).

required, nor is any intent to deceive.[91] "All that is requires is a showing that the acts and practices were capable of being interpreted in a misleading way." [92] Moreover, an act or practice need not be deceptive to be unfair.[93] Whether an act or practice is unfair depends on "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." [94]

Here, Plaintiffs have pleaded facts showing that Xerox engaged in trade or commerce, that Xerox misrepresented that Health Enterprise was ready to go live when it was not, and that Plaintiffs, as users of the defective MMIS, suffered economic harms caused by significantly delayed reimbursements for properly submitted, valid claims. That is sufficient to survive Xerox's 12(b)(6) challenge.[95]

### e. Class Claims

■ In addition to its 12(b)(1) and 12(b)(6) challenges, Xerox challenges the sufficiency of Plaintiffs' class allegations. It contends that the FAC "simply does not properly allege a cognizable class," and that the Court should therefore dismiss Plaintiffs' class allegations.[96] The Court finds Xerox's challenge to be premature, and will instead defer any ruling until a motion for class certification is filed.[97]

## V. CONCLUSION

For the reasons set forth above, Defendant Xerox State Healthcare, LLC's Motion to Dismiss Plaintiffs' First Amended Complaint at <u>docket 35</u> is **DENIED.** Xerox

---

**91.** *O'Neill Investigations,* 609 P.2d at 535.

**92.** *Id.*

**93.** *Id.*

**94.** *ASRC Energy Servs.,* 267 P.3d at 1159 (quoting *O'Neill Investigations,* 609 P.2d at 535).

**95.** *See Western Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.,* 101 P.3d 1047, 1053 (Alaska 2004) ("The legislative history of the [UTPA] indicates that while consumer protection was the dominant motive underlying the act the act was not intended to be limited to consumer transactions"). Moreover, Xerox cites no Alaska decision adopting the remoteness doctrine, and the Court will not read that doctrine into Alaska law at this point in time.

**96.** Dkt. 35 at 49.

**97.** *See Haley v. TalentWise, Inc.,* 9 F.Supp.3d 1188, 1195 (W.D. Wash. 2014), *reconsideration denied,* No. C13-1915 MJP, 2014 WL 1648480 (W.D. Wash. Apr. 23, 2014) ("Whether the Court should strike [plaintiff]'s class definition is not an appropriate issue to resolve on a motion to dismiss because 'compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim.'" (quoting *Gillibeau v. City of Richmond,* 417 F.2d 426, 432 (9th Cir. 1969))); *Cholakyan v. Mercedes–Benz USA, LLC,* 796 F.Supp.2d 1220, 1245 (C.D. Cal. 2011) (explaining that "it is in fact rare" to strike class allegations in advance of a motion for class certification); *In re Wal–Mart Stores, Inc. Wage & Hour Litig.,* 505 F.Supp.2d 609, 614–16 (N.D. Cal. 2007) ("[T]he granting of motions to dismiss class allegations before discovery has commenced is rare."); *Moreno v. Baca,* No. CV007149ABC, 2000 WL 33356835, at *2 (C.D. Cal. Oct. 13, 2000) (holding that defendants' motion to strike class allegations was premature because no motion for class certification had been filed); *see also* 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Civil § 1785.3 (3d 2005) (noting that the practice employed in the overwhelming majority of class actions is to resolve class certification only after an appropriate period of discovery).

is directed to answer Plaintiffs' FAC within 21 days upon entry of this order.

IT IS SO ORDERED.