

**FILED**

May 16 2016, 5:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

G. Jayson Marksberry
Marksberry Law Office, LLC
Brownsburg, Indiana

ATTORNEY FOR APPELLEE

Anthony S. Ridolfo
Hackman Hulett LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

BSA Construction LLC,

*Appellant-Plaintiff,*

v.

Jimmie E. Johnson,

*Appellee-Defendant*

May 16, 2016

Court of Appeals Case No.
49A02-1506-CT-749

Appeal from the Marion Superior
Court

The Honorable Heather Welch,
Judge

Trial Court Cause No.
49D01-1204-CT-13525

**Bailey, Judge.**

# Case Summary

BSA Construction, LLC ("BSA") entered into an agreement to sell residential real estate to Lilia Lopez ("Lopez"). Lopez obtained financing from Bank of America ("the Bank"), pending the Bank's final approval upon appraisal of the property. The Bank contracted with LandSafe, an appraisal agency, which in turn retained Jimmie E. Johnson ("Johnson") to conduct the appraisal. Based upon Johnson's appraisal, the Bank refused to extend financing. BSA sued Johnson, alleging negligence, fraud, and slander of title. Johnson sought summary judgment on all of BSA's claims, and the trial court granted the motion.

BSA now appeals. We affirm.

# Issues

BSA raises several issues for our review. We restate these as whether the trial court erred when it entered summary judgment with respect to BSA's claims against Johnson for negligence, fraud, and slander of title.

# Facts and Procedural History

BSA is in the business of buying and selling residential real estate. In 2010, BSA purchased a particular parcel of residential real estate in Indianapolis and made improvements to the property. BSA then sought to sell the property, and

set an asking price of $64,900. In June 2011, BSA accepted Lopez's offer to purchase the real estate for $60,000, with an earnest money deposit of $500.

[5] Lopez obtained prospective financing for the purchase of the real estate from the Bank. Pursuant to the financing agreement with Lopez, and within the scope of the sales contract between Lopez and BSA, the Bank retained LandSafe to appraise the property, with the understanding that a final financing agreement would depend upon suitable appraisal results.

[6] LandSafe retained Johnson to perform the appraisal of the property. Johnson appraised the real estate at a value of $50,000, $10,000 less than the agreed-upon sale price. As a result of the appraisal, the Bank declined to extend Lopez financing to purchase the property.

[7] Working with its realtor, BSA appealed the Bank's decision. The Bank asked Johnson to review and, if appropriate, revise the appraisal. Johnson revised the appraisal in certain respects, but left in place his prior valuation of the real estate. Pursuant to this, the Bank denied BSA's appeal.

[8] On September 26, 2011, BSA filed suit against Johnson in Hendricks County, articulating theories of relief based in negligence of a professional to a third party, fraud, slander of title, and statutory causes of action for deceptive practices associated with a home loan transaction. Johnson sought a change of venue, and by the parties' stipulation the case was transferred to Marion County on March 14, 2012.

[9] On September 30, 2014, Johnson filed a motion for summary judgment. BSA responded to the motion, designating evidentiary materials in support of its response. Johnson replied and filed a motion to strike numerous items from BSA's designated materials. After a hearing on April 23, 2015, on May 27, 2015, the trial court partially granted Johnson's motion to strike and entered summary judgment for Johnson and against BSA.[1]

[10] This appeal ensued.

## Discussion and Decision

### Standard of Review

[11] BSA appeals the trial court's entry of summary judgment. On appeal, our standard of review is the same as the standard applied by the trial court. *Hewitt v. Westfield Washington Sch. Corp.*, 46 N.E.3d 425, 430 (Ind. 2015). A party seeking summary judgment "shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion," and a party in opposition to the motion must do likewise. Ind. Trial Rule 56(C).

[12] In assessing the evidentiary materials, the court must draw all reasonable inferences in favor of the non-moving party. *Williams v. Tharp*, 914 N.E.2d 756,

---

[1] The trial court entered summary judgment for Johnson with respect to several statutory claims advanced by BSA. BSA does not challenge these portions of the judgment on appeal, and we accordingly leave them undisturbed.

761 (Ind. 2009). "The judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* Further, a trial court's entry of summary judgment is clothed with a presumption of validity upon appeal, and the party challenging the entry of summary judgment must bear the burden of proving that the trial court erred in its application of the summary judgment standard. *Id.* We carefully assess the trial court's decision to ensure the appealing party has not been improperly denied its day in court. *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009). "We will reverse if the law has been incorrectly applied to the facts. Otherwise, we will affirm a grant of summary judgment upon any theory supported by evidence in the record." *Woodruff v. Ind. Family & Social Servs. Admin.*, 964 N.E.2d 784, 790 (Ind. 2012).

## Negligence

[13] BSA's first contention on appeal is that the trial court erroneously concluded that Johnson did not owe BSA a duty of care on negligence principles. Generally, whether a duty exists is a question of law for the court to decide. *Rhodes v. Wright*, 805 N.E.2d 382, 386 (Ind. 2004). Determining whether a duty exists is sometimes dependent upon underlying facts that must be resolved by a trier of fact. *Id.* Here, the trial court concluded that BSA had conceded that Johnson lacked actual knowledge required for a duty to arise. While we agree that Johnson had no duty of care toward BSA, we reach that conclusion on different grounds.

[14] BSA rests its negligence claim in part on its contention that it was a third-party beneficiary to Johnson's contract with the Bank. The status of a third-party beneficiary to a contract can serve as the basis of duty in a negligence action. *Emmons v. Brown*, 600 N.E.2d 133, 134 (Ind. Ct. App. 1992). However, "in Indiana, a professional owes no duty to one with whom he has no contractual relationship unless the professional has actual knowledge that such third person will rely on his professional opinion." *Id.* at 135. The trial court applied the rule in *Emmons* to conclude that, despite BSA's third-party relationship as to Johnson and the Bank, Johnson had no actual knowledge that BSA would rely on his appraisal opinion.

[15] The actual knowledge standard in *Emmons* is, as the Seventh Circuit Court of Appeals has observed, the rule announced by then-Chief Judge Cardozo of the Court of Appeals of New York in *Ultramares Corp. v. Touche*, 174 N.E. 441 (N.Y. 1931). *Decatur Ventures, LLC v. Daniel*, 485 F.3d 387, 390 (7th Cir. 2007) (citing *Ultramares*, *supra*). In *Ultramares*, an accounting firm, Touche, Niven & Co. ("Touche") was retained to prepare an audit opinion for Fred Stern & Co, Inc. ("Stern"). 174 N.E. at 442-43. The information upon which Touche relied was inaccurate because the balance sheet had been falsified by Stern's management. *Id.* at 443. Touche, relying upon the falsified records, issued an audit opinion stating that Stern was solvent when Stern was actually insolvent. *Id.* After Touche issued the audit opinion, Stern used the opinion to obtain financing from Ultramares, shortly after which Stern declared bankruptcy. *Id.*

[16] Ultramares sued Touche, contending that Touche was negligent in its preparation of the audit report, and that the negligence was the cause of Ultramares's damages because the company relied upon the accuracy of Touche's report in making the decision to loan money to Stern. *Id.* at 442-43. Ultramares prevailed at trial, and Touche appealed. On appeal, the Court of Appeals of New York held that Touche had been negligent in preparing the audit report, but that Touche could not be liable to Ultramares "if there has been neither reckless misstatement nor insincere profession of opinion, but only honest blunder." *Id.* at 448. Where there had been only negligence—that is, where there is no "[s]cienter…an indispensable element," *id.* at 447—the court held that Touche's duty extended only to those parties with whom the accountants were in privity. *Id.* at 448. To further extend the duty of care would, the *Ultramares* court observed, be "coincident or nearly so with the duty to refrain from fraud"—or, rather, would blur the distinction between negligence and fraud. *Id.* at 447.

[17] The rule in *Ultramares* has been extended somewhat so that "a professional owes a duty of care only to his client plus any third party who the professional knows will see and rely on any opinion he renders." *Decatur*, 485 F.3d at 390. This holding, as the *Ultramares* Court observed, avoids a situation where "[n]egligence…will have one standard when viewed in relation to the employer, and another and at times a stricter standard when viewed in relation to the public." 174 N.E. at 448.

[18]   Indiana courts have construed the *Ultramares* rule quite narrowly. Thus, in *Emmons*, this Court concluded that an appraiser owed no duty to a buyer of real estate whose name appeared multiple times in documents used by the appraiser to value the home—even where the appraiser's failure to properly appraise the property led to the buyers' incurring costs when the roof of the home failed. 600 N.E.2d at 135-36. This is because, as the *Emmons* Court noted, the duty owed by the appraiser was to the FHA for the purpose of underwriting risk to the FHA and its insurers. *Id.* at 134-35. And, as the Seventh Circuit observed, "appraisers expect lenders to use their opinions to protect themselves *from* borrowers." *Decatur*, 485 F.3d at 390 (emphasis in original). This observation applies *a fortiori* to the risk posed to lenders from sellers who, if anything, want *more* money from lenders than borrowers do.

[19]   BSA argues that it is "self-evident" to licensed real estate professionals that appraisers like Johnson owe a duty of care to sellers in situations like the one in this case. (Appellant's Br. at 20.) To further its point, BSA observes that the standard purchase agreement form used by realtors in central Indiana includes the following text: "If buyer obtains an appraisal of the property, this agreement is contingent upon the property appraising at no less than the agreed upon purchase price." (Appellant's Br. at 21.) Despite this, and despite the designated evidence that both buyer and seller real estate agents know of this

contingency, BSA insists that Johnson be held liable to BSA for alleged errors in the appraisal.[2]

[20] BSA appears to insist that Johnson be held liable to BSA for a professional opinion intended to secure the Bank against BSA's representations to its buyer and to the Bank concerning the value of the real estate. In an arms-length transaction like the one here, we cannot conclude that Johnson had any duty to serve two masters with conflicting interests. Whether Johnson was bound by or aware of the code of ethics of a professional association, or knew that a poor appraisal might be associated with the real estate for some period of time, does not change the fundamental arrangement of the duties at issue here. And, despite BSA's suggestions to the contrary, the law determines whether a duty of care exists—not a non-governmental professional association's code of ethics.

[21] To reach BSA's suggested conclusion would be to require that an agent of the Bank serve instead as an agent of the seller, disrupting the basic purpose of the Bank's contract with the appraiser in derogation of basic contract law principles. We cannot agree with BSA's proposed result.

[22] Johnson's duty was to the Bank and as a matter of law cannot—because of the contradictory interests at issue—have extended to BSA. And because Johnson

___

[2] BSA places great stock in documents issued by the Mid-Indiana Board of Realtors ("MIBOR") as establishing a duty of care. Organizations such as MIBOR are not governmental licensing agencies, but rather are private professional organizations. Whether Johnson, as an associate member of MIBOR, is subject to any discipline within that organization is a separate question from that of liability in this case.

had no duty of care toward BSA, BSA had no basis upon which to rely on Johnson's opinion.

[23] Accordingly, BSA could not as a matter of law rely upon Johnson's opinion, and entry of summary judgment against BSA was not error.

# Fraud

[24] BSA also contends that Johnson's appraisal report amounted to fraud. The elements of fraud in Indiana are well established:

> To prove fraud, a plaintiff must establish the following elements: (1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage of which the plaintiff complains.

*Angel v. Powelson*, 977 N.E.2d 434, 445 (Ind. Ct. App. 2012) (citing, *inter alia*, *Lawyers Title Ins. Co. v. Pokraka*, 595 N.E.2d 244, 249 (Ind. 1992)).

[25] The trial court concluded that, as a matter of law, BSA could not pursue a fraud claim against Johnson because Johnson's appraisal was a statement of opinion rather than of fact. This Court has observed, in the context of appraisals of real estate, that "[m]ere expressions of opinion cannot be the basis for an action in fraud; an action in fraud requires misrepresentation of material fact." *Block v. Lake Mortg. Co.*, 601 N.E.2d 449, 451 (Ind. Ct. App. 1992). BSA argues, directing our attention to the holdings of courts in other states, that

representations of quality or condition should give rise to an action in fraud when they are asserted as fact. (Appellant's Br. at 23.)

[26] Even if we were to adopt such a rationale, there nevertheless remains the problem of reliance. Reliance by its nature requires not merely that a misstatement was made, but also that the complaining party took some kind of action in response to the misstatement. BSA took action before the appraisal by entering into a sales contract with a contract provision that indicated the sale depended upon financing and, in turn, an appraisal. But BSA directs us to no detrimental action or change of position on its part *after* Johnson was retained to perform the appraisal. Moreover, BSA acknowledges that the risk to the transaction of an unfavorable appraisal was known to it in advance of Johnson's work appraising the real estate. (Appellant's Br. at 21.)

[27] Nevertheless, BSA insists that it was defrauded, advancing an upside-down theory of fraud. Rather than fraud resulting from action taken in reliance upon representations already made, BSA suggests that the purportedly fraudulent representation may come *after* reliance—in this case, entering into the sales agreement—has already occurred. We thus decline to adopt the approach BSA suggests.

[28] We accordingly conclude that the trial court did not err when it granted Johnson's motion for summary judgment as to BSA's fraud claim.

# Slander of Title

[29]  We turn now to BSA's contention that the trial court erred when it entered summary judgment as to its slander of title claim.

[30]  This state first recognized the tort of slander of title in *May v. Anderson*, 14 Ind. App. 251, 42 N.E. 946 (1896). In establishing the cause of action, the *May* Court stated that a recovery for slander of title required proof that "statements were false; that they were made maliciously, and that thereby the completion of the trade was prevented," causing the plaintiff damages. *May*, 42 N.E. at 947. Crucially, in *May*, May had stated that he held a lien on real estate Anderson was attempting to sell, and May's false claim of a lien prevented the sale; that is, May made a false statement concerning the existence and nature of Anderson's title to the property, not a false statement concerning the property's monetary value. *Id.* In subsequent cases, this Court has reaffirmed that an actionable claim of slander of title requires proof that "the defendant made false, malicious statements *regarding the plaintiff's ownership of the land in question*." *Walsh & Kelly, Inc. v. Int'l Contractors, Inc.*, 943 N.E.2d 394, 398 (Ind. Ct. App. 2011) (citing *Davis v. Sponhauer*, 574 N.E.2d 292, 300 (Ind. 1991)) (emphasis added), *trans. denied*.

[31]  Here, BSA has not made an allegation that Johnson impugned BSA's claim of title to the real estate. Further, the undisputed facts show that Johnson concluded that the real estate had a value different from that which BSA sought to obtain in a sale. This is not, however, the same as making a statement

concerning the very fact of BSA's ownership; it is the fact of ownership that the tort of slander of title protects, not the monetary value *per se* of the ownership interest. We accordingly find no error in the trial court's conclusions concerning BSA's claim of slander of title.

# Conclusion

[32] The trial court did not err when it granted summary judgment to Johnson on BSA's claims for negligence, fraud, and slander of title.

[33] Affirmed.

Bradford, J., and Altice, J., concur.