

IN THE

# Court of Appeals of Indiana

Elpers Bros. Construction & Supply, Inc., et al.,

*Appellants-Defendants*

v.

Deane L. Smith, II, M.D., et al.,

*Appellees-Plaintiffs*



FILED

Feb 27 2024, 9:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

February 27, 2024

Court of Appeals Case No.
23A-PL-437

Appeal from the Vanderburgh Circuit Court

The Honorable David D. Kiely, Judge

Trial Court Cause No.
82C01-1712-PL-6198

**Opinion by Chief Judge Altice**
Judges Weissmann and Kenworthy concur.

**Altice, Chief Judge.**

## Case Summary

[1] The parties are before us once again, as we previously addressed issues unrelated to those presented in the instant appeal.[1] Here, Elpers Bros. Construction & Supply, Inc. (Elpers Construction), Elpers Development, Inc. (Elpers Development) (collectively, the Builders), and Stonegate Estates Subdivision Homeowners' Association, Inc. (the HOA), appeal the grant of partial summary judgment in favor of Deane L. Smith and Lori A. Smith (collectively, the Smiths). Elpers Construction claims that the trial court erred in determining that it owed the Smiths a non-delegable duty as a matter of law to properly design and construct a drainage system in their neighborhood. Elpers Construction further contends that the trial court erred in denying its motion for summary judgment as to the Smiths' fraud claim. The HOA claims that the trial court erred in not granting its request for summary judgment regarding the Smiths' claim that the HOA operated as the Builders' "alter ego," and Elpers Development maintains that its summary judgment motion should have been granted on the Smiths' negligence claim.

[2] We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

---

[1] *See Elpers Bros. Construction and Supply, Inc. and Elpers Dev., Inc. v. Smith,* No. 19A-PL-1327 (Ind. Ct. App. April 27, 2020).

## Facts and Procedural History

[3] In 2006, the Builders[2] purchased real estate in Evansville that they subsequently divided into a sixteen-lot neighborhood (the Subdivision). Elpers Construction delegated portions of the Subdivision's design and construction to various independent subcontractors, including Sitecon, Inc. (Sitecon), a certified engineering firm. Elpers Construction contracted with Sitecon to design and construct the neighborhood drainage system because it did not have the expertise and engineers on its staff to perform the work.

[4] Sitecon's design included a lake on Lot 1 in the Subdivision to catch storm water runoff that would be released into a downstream waterway. Before Sitecon could commence construction, a proposed drainage report had to be approved by the Vanderburgh County Drainage Board (the Board).[3] The County Surveyor reviewed Sitecon's drainage plans and recommended approval, which the Board ultimately granted in December 2006. Sitecon then recorded the Subdivision plat and commenced construction of the drainage system. Sitecon staked off the perimeter for the lake. No one from Elpers Construction discussed the size of the lake with Sitecon, nor did Elpers Construction oversee or manage its construction. When the lake was

---

[2] Elpers Development is a separate entity owned by Elpers Construction "that typically serves as a general contractor for more economically priced subdivisions and homes." *Appellants' Appendix Vol. 4* at 3.

[3] In accordance with Ind. Code § 36-9-27-68 and -69.5, the County Surveyor is required to review a final drainage report and the calculations therein to determine whether the design plans comport with the county drainage ordinances.

completed, Sitecon re-measured it to ensure that it had been constructed according to plan. The County Engineer's office conducted several inspections during construction to ensure that the drainage system was properly installed.

In January 2007, Paul Elpers, as president of Elpers Construction, signed the "Notice of Intent to Construct a Water Main Extension," State Form 49008, as the "responsible person":

> 19. Certifications:
>
> Responsible Person
>
> I certify that I have reviewed and understand the applicability requirements of this rule and that the water main proposed with the submission of this NOI meets the applicability and eligibility requirements of this rule. *I also certify that the design and construction of this project will be performed under my direction or supervision to assure conformance with 327 I.A.C. 8-3.5 and will meet all local rules or laws, regulations and ordinances.* The information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment.
>
> /s/ Paul A. Elpers 01-25-07

*Appellants' Appendix Vol. 3* at 43-45. (Emphasis added).

An amended drainage plan that Elpers Construction submitted to Vanderburgh County provided in part:

THE CONTRACTOR SHALL COMPLY WITH ALL
LOCAL, STATE AND FEDERAL CODES, ORDINANCES,
RULES, REGULATIONS, ORDERS AND OTHER LEGAL
REQUIREMENTS OF MUNICIPAL AUTHORITIES
WHICH BEAR ON THE PERFORMANCE OF THE WORK.

*Id.* at 41-42.

[7] The Smiths purchased Lot 1 in the Subdivision on May 2, 2007, and hired Elpers Construction to build their residence. Lot 1 included the lake, and Elpers Construction represented to the Smiths that while they could use the lake for recreational purposes, it would also serve as a retention pond for the Subdivision. Thus, the lake was subject to an easement for drainage of surface and storm water from other lots.

[8] The construction contract between the Smiths and Elpers Construction provided that Elpers Construction would obtain all necessary permits and licenses and comply with all laws and ordinances during the construction process. At some point, Elpers Construction represented to the Smiths that it had received "all necessary approvals from governmental agencies." *Appellants' Appendix Vol. 8* at 21.

[9] In June 2007, the Builders recorded Conditions, Reservations, Restrictions, and Protective Covenants for the Subdivision (collectively, the Restrictions). In accordance with the Restrictions, the HOA was incorporated on July 16, 2008. The four owners of Elpers Construction served as the HOA's Board of Directors during the Subdivision's development, and they retained complete control of the HOA. The HOA was responsible for monitoring and paying

various expenses of the Subdivision, including the electric bill for operating the fountain in the lake, maintaining the streetlights, and providing general maintenance in common areas.

[10] The HOA did not adopt any corporate bylaws or adopt an annual budget; nor did it prepare or record minutes of any Board of Directors' meetings. On the other hand, the HOA opened a bank account that was maintained separately from the Builders' accounts. The HOA deposited the association dues into that account, and it paid the HOA's expenses from that account. The HOA also had its own federal tax identification number that it used when filing tax returns.

[11] At some point during construction of the Smiths' residence, Paul Elpers recommended to the Smiths that they purchase a geothermal heating and cooling system. Paul had them look at a unit similar to one that was installed in another residence that Elpers Construction had built. Paul was aware that a heating company he had previously consulted refused to install a geothermal unit on the Smiths' property because the lake lacked sufficient depth. Paul, however, did not advise the Smiths about that determination.

[12] After the Smiths met with Paul, they selected Beuligmann Heating and Air (Beuligmann) to install a geothermal system. Elpers Construction contracted with Beuligmann for the sale and installation of the unit, including coils that were to be placed in the lake. Elpers Construction invoiced the Smiths for the system, with an additional ten percent general contractor's fee.

[13]     From 2009 until sometime in 2015, the system operated with no problems.  At some point, however, the Smiths noticed "soil and mud runoff," erosion, and silt buildup at one end of the lake.  *Appellants' Appendix Vol. 2* at 41.  The excessive silt formed a sandbar that protruded from the surface of the lake.  The Smiths also observed that their yard flooded when it stormed, and that debris would wash into their yard.  The geothermal system functioned less efficiently, and the Smiths believed that was due to drainage issues in the Subdivision and deteriorating lake conditions.  It was determined that the coils in the geothermal unit had been damaged because of the silt buildup.

[14]     The Smiths engaged an engineering firm, Morley and Associates (Morley), to review Sitecon's drainage plans.  Morley's report identified eleven deficiencies in the plan and construction that contributed to the erosion and buildup.  More precisely, one of Morley's engineers noticed an error in the drainage calculation for the size of the culvert that ran under the street in front of the Smiths' lot.  The engineer determined that the wrong precipitation value was used, thus affecting water flow into the lake.  Those errors meant that storm water was more likely to cover the road, cause debris to back up in the system, and result in flooding to the Smiths' yard.  It was determined that the geothermal system was damaged and had to "be reconstructed with dredging of the lake," along with "remedial measures to prevent the lake from refilling with dirt and silt." *Id.* at 42.  The estimated remediation cost amounted to nearly $240,000.

[15]     Morley's engineers also discovered that the necessary permits from the U.S. Army Corps of Engineers and the Indiana Department of Environmental

Management (IDEM) had not been obtained. IDEM sent the Smiths a letter sometime in 2019, indicating that Elpers Construction had failed to obtain the required authorization for the lake on their property. An inspection revealed multiple violations of environmental statutes, rules, and regulations, including improper placement of instream structures and the failure to obtain authorization for discharge of fill material. The Smiths were also informed that a required permit had not been obtained in accordance with the Clean Water Act (the Act), and that several violations of the Act had been committed in constructing the drainage system.

[16] On December 12, 2017, the Smiths filed a complaint against the Builders and the HOA. The complaint alleged that the lake was no longer usable because of the sediment from upstream runoff, and that the Smith's geothermal system was damaged and would have to be reconstructed with dredging and other remedial measures and/or that the coils would have to be relocated. The complaint further alleged that the Builders and the HOA had failed to act in accordance with the various agreements or to remediate the continuing damage to their property or undertake proper reconstruction and maintenance of the drainage facilities. Thus, the Smiths sought a declaratory judgment declaring Builders and the HOA in breach and in violation of the requirements of the subdivision plat, and all applicable ordinances, regulations, and statutes, and an order directing the Builders to immediately comply with the provisions of the subdivision plat and its conditions, and to perform such corrective and remedial work as necessary to be in full compliance. The Smiths also alleged that the

Builders negligently designed, constructed, and maintained the drainage and erosion control facilities of the Subdivision, and that the Builders and the HOA—acting in concert—negligently maintained the Subdivision's drainage and erosion control facilities.

[17]    In July 2018, the Smiths replaced their geothermal system at a cost of nearly $26,000, and they had the new system's pipes placed in the ground rather than in the lake. Thereafter, on November 4, 2021, the Smiths filed an amended complaint adding counts against Elpers Construction for breach of contract and fraud. The Smiths also added a count for declaratory judgment, where it sought to pierce the HOA's corporate veil that would "impose all of the legal duties and obligations" of the HOA on the Developers because the HOA was merely operating as the Builders' "alter ego." *Id.* at 125.

[18]    On August 12, 2022, the Smiths moved for partial summary judgment, claiming that Elpers Construction owed them a non-delegable duty to properly design and construct the drainage system, and that it should be charged with all the duties and liabilities of the HOA. The Builders moved for summary judgment on those same issues.

[19]    The HOA filed a separate motion for summary judgment, claiming that it was entitled to judgment as a matter of law on all counts because the Smiths failed to assert any viable claims against it, and that the Builders should not be considered the HOA's alter ego. The HOA asserted that "alter ego liability is the only allegation or claim against [it in the amended complaint]." *Appellants'*

*Appendix Vol. 13* at 5. Thus, because the HOA was not mentioned in any of the other counts in the amended complaint, i.e., breach of contract or negligence, the HOA asserted that it was entitled to summary judgment because "there is nothing for the [Builders] to be liable for on behalf of the HOA. . . ." *Id.* at 6. The HOA further maintained that it has always operated as a separate legal entity from the Builders.

[20]    The trial court issued the following minute entry on December 20, 2022:

> Court grants Plaintiffs' motion for partial summary judgment, finding that that [Elpers Construction] had a non-delegable duty to properly design and build the [Subdivision's ] drainage. All other Plaintiffs' requests for summary judgment are denied. The Court denies [HOA's] request for summary judgment concerning the HOA being an "alter ego" and grants all other requests for summary judgment made by [the HOA].

*Appellants' Appendix Vol. 2* at 38.

[21]    The Builders and the HOA moved to certify the trial court's order for interlocutory appeal. That motion was granted, and we accepted jurisdiction of the appeal. Additional facts will be supplied as necessary.

## Standard of Review

[22]    Our summary judgment standard of review is well settled:

> We review a summary judgment ruling de novo, applying the same standard as the trial court. The moving party bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment

as a matter of law. Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. Our review is limited to those facts designated to the trial court.

*Ind. Univ. v. Thomas,* 167 N.E.3d 724, 731 (Ind. Ct. App. 2021) (citations omitted).

[23]     We further note that the filing of cross-motions for summary judgment neither alters this standard nor changes our analysis, in that we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Est. of Harris by Harris*, 99 N.E.3d 625, 629 (Ind. 2018).

## Discussion and Decision[4]

## I. Elpers Construction's Non-Delegable Duty to the Smiths

[24]     Elpers Construction argues that the trial court erred in granting the Smiths' motion for partial summary judgment because the designated evidence failed to establish that it owed them a non-delegable duty to design and construct the drainage system. Elpers Construction asserts that because Sitecon designed and

---

[4] The Builders and the HOA have filed a "Joint Motion to Strike Appellees' Appendix." We deny this motion by separate order issued contemporaneously with this opinion.

constructed the system and submitted the plans for the county's approval, it is not liable as a matter of law. Hence, Elpers Construction maintains that *it* was entitled to summary judgment on this issue.

[25]    A principal that delegates a duty to an independent contractor is generally not liable for the negligence of that independent contractor in performing the duty. *Bagley v. Insight Communications Co., L.P.,* 658 N.E.2d 584, 586 (Ind.1995). However, an exception to this general rule exists "where the principal is by law or contract charged with performing the specific duty." *Id.* Duties that are imposed by law or contract are considered non-delegable because they are deemed so important to the community that the principal should not be permitted to transfer these duties to another. *Id.* at 587.

[26]    Relevant here are the circumstances in *Bartholomew Cnty. v. Johnson*, 995 N.E.2d 666 (Ind. Ct. App. 2013), where landowners—whose property was damaged by flooding—brought an action against the county alleging that the damage was caused by the county's negligent design, construction, maintenance, and operation of a nearby bridge. The county filed a third-party complaint against the bridge designer and builder. In determining that the county could not avoid liability for delegating its legal duty to maintain bridges, we analyzed the holding in *Shand Mining, Inc. v. Clay County Bd. of Commissioners*, 671 N.E.2d 477, 481 (1996), *trans. denied,* where it was determined that while a governmental entity could delegate its responsibility for maintaining streets to a private party, the county could not avoid liability for negligent maintenance of the streets on the basis of that delegation. The

holdings in *Johnson* and *Shand Mining* were premised on well-settled Indiana law that a principal cannot avoid liability for the negligence of its agent if the principal is by law or contract charged with performing the specific duty. *See Bagley,* 658 N.E.2d 584 at 586.

[27]     As for Elpers Construction's development of the Subdivision in this case, Ind. Code § 36-9-27-69.5 provides that

> (a) Unless otherwise required by an ordinance of the county, a person who lays out a subdivision of lots or lands outside the corporate boundaries of any municipality must submit plans and specifications for the drainage of the subdivision *in accordance with this section*. The county drainage board must approve the drainage plan before the person may proceed with development of the subdivision.
>
> (b) *A drainage plan and specifications submitted under subsection (a) to the county drainage board must comply with this chapter.* Except as provided in subsection (c), the plan must comply with the following standards:
>
>> (1) The plan must maintain the amount of drainage through the tract that existed when the tract was created. If any tiles are cut, broken down, or rendered useless during the construction activity on the tract, the landowner will be responsible for the repair, replacement, or relocation of the tile.
>>
>> (2) The plan may not change the locations where surface water enters the tract and exits the tract from the locations that existed when the tract was created.
>>
>> (3) Water which sheds off of a new structure, especially when the new structure is elevated or near a property line, or both, must exit the tract in the same location where it did when the tract was created.
>
> (c) The county drainage board may approve an alternate plan that does not comply with the standard set forth in subsection (b)(2).

(Emphases added).

In addition to the above, various Indiana statutes and local ordinances impose duties on the developer of a subdivision to properly design and install the area's drainage components. For instance, Ind. Code § 36-7-4-702 provides:

> *(d) As a condition of primary approval of a plat, the commission or committee may specify:*
>
>> (1) the manner in which public ways shall be laid out, graded, and improved;
>> (2) a provision for water, sewage, and other utility services;
>> (3) a provision for lot size, number, and location;
>> (4) *a provision for drainage design;* and
>> (5) a provision for other services as specified in the subdivision control ordinance.

(Emphases added). Vanderburgh County has an ordinance that imposes a specific duty on a developer to include "a provision for drainage design" under I.C. § 36-7-4-702. More particularly, Vanderburgh County Code 13.04.095, "Conditions of drainage plan approval," states in part that

> F. The person . . . or . . . entity to whom approval of the drainage plan is granted must be the person . . . or entity who will be responsible for accomplishing the project for which the drainage plan is developed. Should the person . . . or other entity to which approval of the Drainage Plan is granted is no longer responsible for accomplishing the project for which the Drainage Plan is developed, then the person . . . or other entity that assumes or acquires a project with an approved Drainage Plan must immediately apply to the Drainage Board for approval to transfer the obligations of the previously approved Drainage Plan by submitting to the Drainage Board a Form 801 with the information required under Section 13.04.085.

[29]     Additionally, the specific error that was made in the stormwater runoff calculations in this case is addressed in Vanderburgh County Code 13.04.205, "Determination of Runoff Quantities," that states:

> Computing Rates of Stormwater Runoff.  The stormwater runoff quantities *shall be computed for the area of the project*, plus the area of the watershed flowing into the project.  The quantity of runoff which is generated as the result of a given rainfall intensity may be calculated as follows in this section.

(Emphasis added).

[30]     In light of the above, Elpers Construction cannot delegate the duty to properly design and construct the drainage system for the Subdivision with impunity because it is a duty specifically imposed upon it by law.  If Elpers Construction were permitted to prevail, its roles and responsibilities would be significantly reduced, which is contrary to the express terms of the statutes and ordinance that require conformity with the drainage code.  We therefore conclude that the trial court properly granted partial summary judgment to the Smiths on their claim that Elpers Construction owed a non-delegable duty to properly design and construct the Subdivision's drainage system.

## II.  The HOA

[31]     The HOA argues that the trial court erred in granting only partial summary judgment in its favor.  Specifically, the HOA contends that it should have been "entirely dismissed" from the action because there are no longer any viable claims of wrongdoing, i.e., breach of contract or negligence, against it in light of

the trial court's order. *Appellants' Brief* at 32. Hence, the HOA contends that because "piercing the corporate veil" is only a remedy rather than a cause of action, the trial court should have granted its motion for summary judgment in all respects. *Appellants' Brief* at 33.

[32] The corporate alter ego doctrine is a device by which a plaintiff attempts to demonstrate that two corporations are so closely connected that the plaintiff should be able to sue one for the actions of the other. *Greater Hammond Cmty. Servs., Inc. v. Mutka,* 735 N.E.2d 780, 785 (Ind. 2000). A court "pierces the corporate veil" to furnish a means for a complainant to reach a second corporation or individual upon a claim that otherwise would have existed only against the first corporation. *Reed v. Reid,* 980 N.E.2d 277, 297 (Ind. 2012). Courts will not provide the protection of limited liability to an entity "that is a mere instrumentality of another and engages in misconduct in the function or use of the corporate form." *CBR Event Decorators, Inc. v. Gates*, 962 N.E.2d 1276, 1281-82 (Ind. Ct. App. 2012), *trans. denied*. Courts invoke the equitable doctrine of piercing the corporate veil to "protect innocent third parties from fraud or injustice." *Reed,* 980 N.E.2d at 301.

[33] Although our courts have not had occasion to specifically address whether piercing the corporate veil under an alter ego theory constitutes an independent claim for substantive relief, the jurisdictions that have addressed this issue have determined that piercing the veil is not a theory of liability. Rather, such is a remedy and a means of imposing liability on an underlying cause of action like

a tort or breach of contract.[5] We adhere to that determination and conclude that piercing the corporate veil is an equitable remedy rather than an independent cause of action.

[34]     Here, the trial court partially granted the HOA's motion for summary judgment but for it "being an alter ego" of the Builders. *Appellant's Appendix Vol. 2* at 38. In other words, the trial court granted summary judgment in the HOA's favor on all independent causes of action. In light of the trial court's order, we can only conclude that any independent underlying causes of action that the Smiths asserted against the HOA, i.e., breach of contract and/or negligence, were dismissed. Inasmuch as the alter ego theory is not an independent cause of action, the remedy of piercing the corporate veil would be futile, and the HOA must necessarily be dismissed as a named party. We therefore conclude that the trial court erred in only partially granting the HOA's motion for summary judgment.

## III. Elpers Development

[35]     Elpers Development argues that the trial court erred in denying its motion for summary judgment on the Smiths' negligence claim against it, contending that

---

[5] *See Krawaic v. Manly*, 811 S.E.2d 542, 552 (N.C. 2018); *A.L. Dougherty Real Est. Mgmt. Co., LLC v. Su Chin Tsai,* 98 N.E.3d 504, 515 (Ill App. 2017); *Monster Heavy Hauler's, LLC v. Goliath Energy Services, LLC*, 83 N.W.2d 917, 926 (N.D. 2016) *Gallagher v. Persha*, 891 N.W.2d 505, 509 (Mich. App. 2016); *Steiner Electric Co. v. Maniscalco*, 51 N.E.3d 45, 63 (Ill. App. 1st Dist. 2016); *Pister v. State, Dep't of Revenue,* 354 P.3d 357, 362-63 (Ala. 2015); *Dodd v. Savino*, 426 S.W.3d 275, 291 (Tx. Ct. App. 14th Dist. 2014); *Restaurant of Hattiesburg, LLC v. Hotel & Restaurant Supply, Inc.*, 84 So.3d 32, 47 (Miss. App. 2012).

it successfully negated the "duty element." *Appellants' Brief* at 38. Therefore, Elpers Development maintains that it is not subject to liability in this matter.

[36]     Summary judgment is rarely appropriate in negligence cases. Rather, issues of negligence, contributory negligence, causation, and reasonable care are more appropriately left for the determination of a trier of fact. *Humphery v. Duke Energy Ind., Inc.,* 916 N.E.2d 287, 290-91 (Ind. Ct. App. 2009). We note, however, that whether a duty exists in the context of a negligence claim is a question of law for the court to decide. *Goodwin v. Yeakle's Sports Bar and Grill, Inc.,* 62 N.E.3d 384, 386-87 (Ind. 2016). In circumstances where the element of duty has not already been declared or otherwise articulated, Indiana courts use a three-part balancing test to determine whether a duty exists: (1) the relationship between parties; (2) the foreseeability of harm; and (3) public policy concerns. *Goodwin*, 62 N.E.3d at 387.

[37]     With regard to the relationship between the parties, our Supreme Court recently reaffirmed the rule announced in *Citizens Gas & Coke Util. v. Amer. Econ. Ins.,* 486 N.E.2d 998, 1000 (Ind. 1985) that requires privity before a party can bring a negligence claim against a third-party contractor for property damage. *See U.S. Automatic Sprinkler Corp. v. Erie ins. Exch.,* 204 N.E.3d 215, 225 (Ind. 2023) (holding that when a contractor's alleged negligent work poses a risk to only property—not persons—the privity requirement precludes recovery for property damages in a negligence action).

[38]     Here, while the Smiths alleged that Elpers Development was negligent because its construction of other residences in the Subdivision may have contributed to the erosion and sediment buildup in the lake, there was no contract or relationship between the Smiths and Elpers Development. The designated evidence establishes that Elpers Development did not construct the Smiths' residence, it had no role in developing the Subdivision's drainage system, and it did not participate in the lake's construction. It is also undisputed that Elpers Development's alleged negligence did not pose a risk of personal injury to the Smiths.

[39]     In light of these circumstances, the privity requirement set forth in *Citizens Gas* and *U.S. Sprinkler* controls, and the Smiths are therefore precluded from recovering property damages from Elpers Development. Thus, we need not address the remaining two prongs of the duty test, and we therefore conclude that the trial court erred in denying Elpers Development's motion for summary judgment.

## IV. Elpers Construction—Fraud

[40]     Elpers Construction argues that the trial court erred in denying its motion for summary judgment on the fraud claim. Specifically, Elpers Construction contends that the Smiths failed to adequately plead allegations of fraud with specificity "that would raise an issue of material fact." *Appellants' Brief* at 46.

[41]     To prevail on a fraud claim, the plaintiff must establish (1) a material misrepresentation of past or existing fact; (2) which was untrue; (3) was made

with knowledge of or in reckless ignorance of its falsity; (4) was made with the intent to deceive; (5) was rightfully relied upon by the complaining party; and (6) which proximately caused the injury or damage of which the plaintiff complains. *BSA Const. LLC v. Johnson*, 54 N.E.3d 1026, 1031 (Ind. Ct. App. 2016), *trans. denied.*

[42] Indiana Trial Rule 9(B) provides that all averments of fraud must be pled with specificity as to the "circumstances constituting fraud." To satisfy this requirement, the party alleging fraud must specifically allege the elements of fraud, the time, place, and substance of false reports, and any facts that were misrepresented, as well as the identity of what was procured by fraud. *BloomBank v. United Fid. Bank F.S.B.,* 113 N.E.3d 708, 721 (Ind. Ct. App. 2018), *trans. denied*. The failure to comply with the rule's specificity requirements constitutes a failure to state a claim upon which relief may be granted; thus, "any pleading which fails to satisfy the requirements fails to raise an issue of material fact." *Payday Today, Inc. v. Hamilton,* 911 N.E.2d 26, 33 (Ind. Ct. App. 2009), *trans. denied.*

[43] Elpers Construction asserts that the Smiths did not specifically allege any misrepresentation or any other basis for the fraud claim. *See, e.g., Weber v. Costin,* 654 N.E.2d 1130, 1134 (Ind. Ct. App. 1995) (holding that misrepresentations not pled in complaint are properly disregarded by the court). Notwithstanding that contention, this court has held that

> the exact level of particularity that is required will necessarily differ based on the facts of the case. [W]hile we require a

plaintiff claiming fraud to fill in a fairly specific picture of the allegations in [the] complaint, we remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail.

*BloomBank,* 113 N.E.3d at 721.

[44]     Here, the Smiths alleged in their amended complaint that Elpers Construction recommended that they install a geothermal heating and air conditioning system, representing that such a system would operate more efficiently than a conventional HVAC unit.  Paul Elpers—the president of Elpers Construction—advised the Smiths that the lake would accommodate heating coils for the geothermal system and function properly, even though he had been informed of deficiencies in the lake's size and its inability to allow for such a system.  The Smiths purchased the system, and Elpers Construction billed the Smiths for the price of the unit plus a ten percent general contractor's fee.

[45]     The Smiths alleged in their complaint that they relied on Paul's misrepresentations to their detriment that resulted in damage to their unit because of the faulty design and construction of the retention pond.  These allegations are sufficient to satisfy the required specificity for fraud.  We therefore conclude that the trial court properly denied Elpers Construction's motion for summary judgment on the fraud claim.

## Conclusion

[46]     In light of our discussion above, we conclude that the trial court properly granted summary judgment for the Smiths on their claim that Elpers

Construction owed a non-delegable duty to properly design and construct the Subdivision's drainage system. The trial court erred, however, in granting only partial summary judgment for the HOA, and we further conclude that the trial court erred in denying Elpers Development's motion for summary judgment. Finally, we conclude that the trial court properly denied Elpers Construction's motion for summary judgment on the Smiths' fraud claim.

[47] Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Weissmann, J. and Kenworthy, J., concur.

ATTORNEYS FOR APPELLANTS

Alyssa C.B. Cochran
Crystal G. Rowe
Van T. Willis
New Albany, Indiana

Reed Schmitt
Derrick McDowell
Evansville, Indiana

ATTORNEYS FOR APPELLEES

David L. Jones
Craig R. Emig
Evansville, Indiana